## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**JURY TRIAL DEMANDED**

AARON RUBENSTEIN,

      Plaintiff,

v.

VERY HUNGRY, LLC, a Colorado limited liability company,
SCOTT J. REIMAN and
SCOTT REIMAN 1991 TRUST,

      Defendants,

and

PROSPECT GLOBAL RESOURCES, INC., a Nevada corporation,

      Nominal Defendant.

---

COMPLAINT FOR RECOVERY OF SHORT SWING PROFITS UNDER 15 U.S.C. § 78p(b)

---

      Plaintiff Aaron Rubenstein ("Plaintiff"), by his attorney, as and for his complaint herein, respectfully alleges as follows on knowledge as to himself and his own acts, and on information and belief as to all other matters:

### NATURE OF ACTION

      1.      This is an action to recover "short swing" profits under Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Act"), 15 U.S.C. § 78p(b).

      2.      Section 16(b) is a strict liability statute.  A plaintiff must prove only that the defendant was an insider of a public company (*insider* defined as an officer, director or beneficial owner of more than 10% of a class of equity security or that company) who profited

from the purchase and sale of the company's stock or derivative securities within a period of less than six months.  Evidence of the defendant's intent, misuse of information, or bad faith is irrelevant and not required.  Section 16(b) is not punitive and insiders are simply required to disgorge profits realized in violation of the Act.  Whether a defendant has realized a profit, and the calculation of such profit, from particular transactions under Section 16(b) is determined in accordance with rules and regulations promulgated thereunder by the U.S. Securities Exchange Commission (the "SEC") and judicial interpretations.

3.      In this action, Plaintiff alleges that Defendants Very Hungry, LLC ("Very Hungry") and Scott J. Reiman ("Reiman"), individually and/or by and through Defendant Scott Reiman 1991 Trust (the "Reiman Trust," and, together with Reiman, the "Reiman Defendants"), were insiders of Nominal Defendant Prospect Global Resources, Inc. ("Prospect") and that Very Hungry, Reiman and the Reiman Trust (collectively, "Defendants") engaged in substantial transactions in Prospect common stock and derivative securities.  The transactions in derivative securities are alleged to be equivalent, under the rules and regulations of the SEC, to the buying and selling of Prospect common stock at a significant profit.  Defendants must return their profit, as it is calculated under SEC rules and regulations applicable to the transactions in question, to Prospect.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Section 27 of the Act, 15 U.S.C. § 78aa.

5.      Venue is proper in this Court pursuant to Section 27 of the Act, 15 U.S.C. § 78aa. The principal offices of both Defendant Very Hungry and Nominal Defendant Prospect are

located in this District.   Defendant Reiman, who controls Defendant Reiman Trust, resides in this District.  All of the Defendants and Nominal Defendant Prospect transact business and are found in this District.

## THE PARTIES

6.      Plaintiff Aaron Rubenstein is a Rhode Island resident and a shareholder of Prospect.

7.      Nominal Defendant Prospect is a Nevada corporation with principal offices at 1401 17th Street, Suite 1550, Denver, Colorado 80202.  Prospect is engaged in the development of a conventional underground potash mine in the Holbrook Basin of eastern Arizona.  This action is brought in the right and for the benefit of Prospect, which is named as a nominal defendant solely in order to have all necessary parties before the Court.

8.      Defendant Very Hungry is a Colorado limited liability company with principal offices at 730 17th Street, Suite 800, Denver, Colorado 80202.  Very Hungry is a private investment company that invests in marketable securities, real estate, private equity, venture capital, and oil and gas transactions.  Very Hungry is, and at all relevant times has been, the beneficial owner of more than 10% of Prospect common stock and thus an insider of Prospect subject to Section 16(b).

9.      Defendant Scott J. Reiman is a resident of Denver, Colorado, with offices located at the same address as the offices of Very Hungry.  Reiman owns and controls Hexagon Investments, LLC ("Hexagon"), an investment firm headquartered in Denver.  Very Hungry is presently controlled by Grandhaven Energy, LLC ("Grandhaven"), an entity that is owned 90% by Hexagon and 10% by Reiman.  At all relevant times, Very Hungry was controlled by

Grandhaven and/or Hexagon.  For these reasons and for the reason set out at paragraphs 11, 12, 28, 29, 40 and 41 Reiman is, and at all relevant times has been, the beneficial owner of more than 10% of Prospect common stock, through his indirect ownership and control of Very Hungry, and his ability to exercise control over Very Hungry's investment in Prospect and his membership in a Group as defined in SEC Rule 13(d)-5(b)(1) whose members beneficially owned more than 10% of Prospect's common stock.

10.     Defendant Scott Reiman 1991 Trust is a private investment vehicle controlled by Reiman.  Reiman has beneficial ownership of and a pecuniary interest in any and all Prospect shares owned by the Reiman Trust.  Thus, Reiman may be held liable for any short swing profits realized by the Reiman Trust under Section 16 of the Act.  The Reiman Trust was a member of Very Hungry until it liquidated its membership interest on June 7, 2012, upon which the Reiman Trust received a distribution of its pro rata interest in the assets of Very Hungry, including Prospect common stock and warrants, as further described in Paragraph 20, below.

11.     When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group ("Group") formed thereby is deemed to have acquired beneficial ownership, of purposes of Sections 13(d) and 13(g) of the Act, as of the date of such agreement, of all equity securities of the issuer beneficially owned by any such persons.  Each member of the Group is deemed to be, in his or her individual capacity, a beneficial owner of more than 10% of a class of the issuer's equity securities.

12.     At all relevant times, Defendants acted as a Group under Section 13(d)(3) of the Securities Exchange Act, 15 U.S.C. § 78m(d)(3), and *inter alia* SEC Rule 13d-5(b)(1) promulgated thereunder.  Defendants acted together for the purpose of acquiring, holding or

disposing of Prospect securities by, among other things, engaging in concert in the May 2, May 22, and August 30, 2013 transactions to be described herein.

## STATUTORY REQUISITES

13.     The violations of Section 16(b) described herein involve non-exempt securities in non-exempt transactions engaged in by a non-exempt individual and non-exempt entities within the meaning of the Act.

14.     At all relevant times, the common stock of Prospect was registered pursuant to Section 12(g) of the Act, 15 U.S.C. § 78*l*(g), and was listed for trading on the NASDAQ stock market.

15.     Demand for prosecution was made on Prospect by Plaintiff with respect to Very Hunry on October 24, 2013, and with respect to Scott J. Reiman and the Scott J. Reiman 1991 Trust on January 16, 2014.  More than 60 days have passed since each of such demands was made, during which time Prospect has failed and refused to act to recovery profits due to it.  By letters of counsel Prospect has stated it does not believe violations of Section 16(b) of the Act to have taken place. Further delay in filing suit would be a futile gesture.

16.     This action is brought within two years of the occurrence of the transactions giving rise to Section 16(b) liability, as described herein.

## FACTUAL ALLEGATIONS

17.     Defendant Reiman became a Section 16(b) insider of Prospect on April 25, 2011, when Hexagon made a $2.5 million investment in Prospect, and received a note convertible into Prospect common stock and additional warrants to purchase Prospect common stock.  This investment resulted in Reiman's (and Hexagon's) beneficial ownership of 4 million shares, or

15.7%, of Prospect common stock.  On September 19, 2011, Hexagon made another $1.5 million investment in Prospect, which increased Reiman's (and Hexagon's) beneficial ownership to 5,312,500 shares, or 19%, of Prospect common stock.  The participation of the Scott J. Reiman 1991 Trust in the May 2, 2013, loan, conversion agreement and warrant modification along with Very Hungry at a time when their aggregate beneficial ownership of Prospect equity securities of one or more classes exceeded 10% confirmed their insider status at the time of the transactions to be described.

18.     Very Hungry became a Section 16(b) insider of Prospect on November 22, 2011, when it acquired 2,588,235 shares of common stock and a warrant to purchase an additional 2,558,235 shares of common stock.  Very Hungry purchased the shares and the warrant from Prospect for an aggregate purchase price of $10,999,998.75.  This investment resulted in Very Hungry's beneficial ownership of 12.3% of Prospect's common stock.

19.     Very Hungry paid the purchase price for its initial investment in Prospect out of the working capital of Hexagon.  At that time, Hexagon was the manager and a member of Very Hungry, and owned 90% of the economic interests in Very Hungry.

20.     On June 7, 2012, Hexagon contributed all of the Prospect common stock and warrants it beneficially owned to Very Hungry.  These securities represented an aggregate of 5,427,600 shares of common stock (consisting of both common stock and warrants), and resulted in Very Hungry's beneficial ownership increasing to 10,604,070 shares, or 23%, of Prospect common stock.  After this contribution, Hexagon distributed all of its membership interests in Very Hungry to the members of Hexagon on a pro rata basis.  Also on June 7, 2012, the Reiman Trust liquidated its membership interest in Very Hungry and received a distribution of its pro

rata interest in the assets of Very Hungry, which included Prospect common stock and warrants equivalent to 7.7% of the outstanding common stock of Prospect.

21.     Reiman served as a director on Prospect's board from August 24, 2011 until March 16, 2012, at which time he resigned.  Reiman was not appointed to the board pursuant to any understanding or arrangement with Prospect.  Prospect directly compensated Reiman for his service on the board.

22.     Conway J. Schatz served as a director on Prospect's board from April 1, 2012 until September 29, 2013.  Mr. Schatz is a vice-president of Hexagon and a manager of Very Hungry.  Mr. Schatz does not, and at all relevant times did not, have dispositive power over Very Hungry's investment in Prospect.  Mr. Schatz was nominated to the Prospect board at the suggestion of Reiman, and not pursuant to any understanding or arrangement with Prospect. Prospect directly compensated Mr. Schatz for his service on the board and reimbursed Mr. Schatz for expenses incurred in connection with his board service.  Notwithstanding Mr. Schatz's resignation from the Prospect board, Very Hungry continues to maintain its investment in Prospect, and remains a Section 16(b) insider with a sizeable beneficial ownership interest in the Company.

23.     Mr. Schatz was described to shareholders in Prospect public filings (including in its most recent proxy statement filed with the SEC on August 1, 2013, in which shareholder approval for the conversion transaction was sought, as described in Paragraph 55 below,) as an "independent" director under NASDAQ rules, with no undisclosed relationships or arrangements that might compromise his independence.  As such, Mr. Schatz was Chairman of the Audit

Committee, and served on the Finance and Operating Committee, and the Governance, Nominating and Compensation Committee of the Prospect board.

24.     Very Hungry does not have, and at all relevant times did not have, a contractual right to appoint a director to the Prospect board.

25.     No public filings stated or implied that Mr. Schatz represented Very Hungry's interests on the Prospect board of directors.  The Form 8-K filed on March 21, 2012 announcing Reiman's resignation from and Mr. Schatz's appointment to the Prospect board made no mention of Very Hungry, did not state that Mr. Schatz was appointed to represent Very Hungry's interest on the Prospect board, and did not describe Mr. Schatz as Very Hungry's so-called "deputy."  No subsequent public filing in which Mr. Schatz's biography and position as a Prospect director was mentioned stated that Mr. Schatz represented Very Hungry's interests on the Prospect board or described Mr. Schatz as Very Hungry's so-called "deputy."

26.     In Very Hungry's Schedule 13D, jointly filed with Hexagon and Reiman on May 23, 2012, and on every Amendment to that Schedule 13D filed by Very Hungry thereafter, Very Hungry expressly stated that it had no intention to seek board representation or plans to effect a change in Prospect's management or board.

27.     Since becoming insiders of Prospect subject to Section 16, each of Very Hungry and Mr. Schatz have separately filed the reports required by Section 16(a) (i.e., SEC Forms 3, 4, and 5).  Very Hungry has not disclosed beneficial ownership of securities held, acquired, or disposed of by Mr. Schatz on its Section 16(a) reports, and Mr. Schatz has not disclosed beneficial ownership of securities held, acquired or disposed of by Very Hungry on his Section 16(a) reports.  On those filings, Very Hungry has indicated that it is only a "10% Owner" of

Prospect, and has never indicated that it may also be considered a "Director" of Prospect (and, similarly, Mr. Schatz has indicated that he is only a "Director" of Prospect, and has never indicated that he may also be considered a "10% Owner" of the Company), despite clear instructions on those forms that reporting persons should report "all applicable" bases on which they are subject to Section 16.

### The May 2, 2013 Warrant Amendment
### (Equivalent to the Sale and Simultaneous Purchase
### of Prospect Common Stock by Very Hungry and the Reiman Trust)

28.     On May 2, 2013, Very Hungry and the Reiman Trust, acting in concert and pursuant to an agreement to acquire, hold and dispose of equity securities or equity security equivalents of Prospect, loaned Prospect an aggregate of $5 million ($4,032,743.00 from Very Hungry; $967,257.00 from the Reiman Trust) in exchange for an aggregate of $5.5 million in unsecured, subordinated promissory notes ($4,436,017.30 million to Very Hungry, and $1,063,982.70 to the Reiman Trust; collectively, the "Notes").  Very Hungry and the Reiman Trust simultaneously agreed with Prospect, in a single document, to convert their Notes into the securities to be offered in a scheduled rights offering by Prospect.   In further consideration for this loan, Prospect reduced the exercise price and extended the maturity of warrants held by Very Hungry and the Reiman Trust.  The exercise prices of these warrants were reduced to $.25 per share (from exercise prices ranging from $3.00 to $4.25 per share), and the maturity dates of these warrants were extended until August 1, 2016.

29.     By agreeing to act together in procuring a modification to the warrants they held and to acquire securities of Prospect in the rights offering, Very Hungry and the Reiman Trust were acting as a Group with respect to Prospect. The aggregate beneficial ownership of Prospect

common stock by members of the Group exceeded 10% making each of the members of that Group each a beneficial owner of more than 10% of such class.

**Very Hungry**

30.     Very Hungry beneficially owned warrants to purchase a total of 4,841,608 shares of Prospect common stock which were amended as a result of the transaction on May 2, 2013, as described in Paragraph 28.

31.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the amendment of the warrants as described in Paragraph 28 was deemed to be equivalent to: (i) the disposition or sale by Very Hungry of the outstanding warrants to purchase a total of 4,841,608 shares of Prospect common stock (the equivalent of 96,833 shares, after adjusting for the 50 to 1 reverse stock split subsequently effected by Prospect); and (ii) the simultaneous purchase by Very Hungry of new warrants for the purchase of a total of 4,841,608 shares of Prospect common stock (again equivalent to 96,833 shares in light of the subsequent 50 to 1 reverse stock split), with the new warrants having the amended terms to which Prospect, the Reiman Trust, and Very Hungry agreed on May 2, 2013.

32.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the disposition by Very Hungry of the outstanding warrants to purchase 4,841,608 shares of Prospect common stock as described in Paragraphs 28, 30 and 31 is deemed to be equivalent to the sale by Very Hungry of 4,841,608 shares of Prospect common stock (96,833 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

33.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the purchase by Very Hungry of the new warrants to purchase 4,841,608 shares of

Prospect common stock as described in Paragraph 28, 30 and 31 is deemed to be equivalent to the purchase by Very Hungry of 4,841,608 shares of Prospect common stock (96,833 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

34.     For purposes of "matching" both the sale described in Paragraph 31 and the purchase described in Paragraphs 31 and 33 with the other transactions identified in this Complaint as deemed purchases or sales by Very Hungry under Section 16 of the Act and the SEC rules and regulations thereunder, the price at which Very Hungry was deemed to have sold the 96,833 (adjusted) shares of Prospect common stock as described in Paragraph 31 and 32, and purchased the 96,833 (adjusted) shares of Prospect common stock as described in Paragraph 31 and 33 was, in each case, approximately $15 per share.  Upon information and belief, $15 per share was the (approximate, adjusted) closing market price for Prospect common stock publicly traded on the NASDAQ Exchange on May 2, 2013.

**The Reiman Defendants**

35.     The Reiman Trust beneficially owned warrants to purchase a total of 1,893,650 shares of Prospect common stock which were amended as a result of the transaction on May 2, 2013, as described in Paragraph 28.

36.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the amendment of the warrants as described in Paragraphs 28 and 34 was deemed to be equivalent to: (i) the disposition or sale by the Reiman Trust of the outstanding warrants for the purchase of a total of 1,893,650 shares of Prospect common stock (the equivalent of 37,873 shares, after adjusting for the 50 to 1 reverse stock split subsequently effected by Prospect); and (ii) the simultaneous purchase by the Reiman Trust of new warrants for the purchase of a total of

1,893,650 shares of Prospect common stock (again equivalent to 37,873 shares in light of the subsequent 50 to 1 reverse stock split), with the new warrants having the amended terms to which Prospect, the Reiman Trust, and Very Hungry agreed on May 2, 2013.

37.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the disposition by the Reiman Trust of the outstanding warrants for the purchase of 1,893,650 shares of Prospect common stock as described in Paragraphs 28 and 34 is deemed to be equivalent to the sale by the Reiman Trust of 1,893,650 shares of Prospect common stock (37,873 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

38.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the purchase by the Reiman Trust of the new warrants for the purchase of 1,893,650 shares of Prospect common stock as described in Paragraph 36 is deemed to be equivalent to the purchase by the Reiman Trust of 1,893,650 shares of Prospect common stock (37,873 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

39.     For purposes of "matching" both the sale described in Paragraph 36 and the purchase described in Paragraphs 36 and 37 with the other transactions identified in this Complaint as deemed purchases or sales by the Reiman Trust under Section 16 of the Act and the SEC rules and regulations thereunder, the price at which the Reiman Trust was deemed to have sold the 37,873 (adjusted) shares of Prospect common stock as described in Paragraph 37, and purchased the 37,873 (adjusted) shares of Prospect common stock as described in Paragraph 38 was, in each case, approximately $15 per share.  Upon information and belief, $15 per share was the (approximate, adjusted) closing market price for Prospect common stock publicly traded on the NASDAQ Exchange on May 2, 2013.

12

**The May 22, 2013 Modification Agreement**
**(Equivalent to the Sale and Simultaneous Purchase**
**of Prospect Common Stock by Very Hungry and the Reiman Trust)**

40.     On May 22, 2013, the Reiman Trust and Very Hungry entered into a Modification

Agreement with Prospect by which the Reiman Trust and Very Hungry agreed, pending approval

of Prospect's shareholders as required by NASDAQ rules, to invest the Notes into units offered

in Prospect's rights offering, which was also initially announced on May 22, 2013.  This

Modification Agreement also amended the exercise price of the warrants held by the Reiman

Trust and Very Hungry from $.25 per share to $.30 per share, and extended the termination date

of the warrants from August 1, 2016 to August 1, 2017.  Both were material changes.

41.     By agreeing to act together in making the Modification Agreement of May 22,

2013, relating to the acquisition, disposition or holding of shares of Prospect, Very Hungry and

the Reiman Trust again were acting as a Group with respect to Prospect. The aggregate

beneficial ownership of Prospect common stock by members of the Group exceeded 10%

making each of the members of the Group a more than 10% beneficial owner of such class.

**Very Hungry**

42.     Very Hungry beneficially owned warrants to purchase a total of 4,841,608 shares

of Prospect common stock which were amended as a result of the Modification Agreement on

May 22, 2013, as described in Paragraph 40.

43.     For purposes of Section 16 of the Act and the SEC rules and regulations

thereunder, the amendment of the warrants as described in Paragraphs 40 and 42 was deemed to

be equivalent to: (i) the disposition or sale by Very Hungry of the outstanding warrants to

purchase a total of 4,841,608 shares of Prospect common stock (the equivalent of 96,833 shares,

after adjusting for the 50 to 1 reverse stock split subsequently effected by the Company); and (ii) the simultaneous purchase by Very Hungry of new warrants to purchase a total of 4,841,608 shares of Prospect common stock (again equivalent to 96,833 shares in light of the subsequent 50 to 1 reverse stock split), with the new warrants having the amended terms to which Prospect and Very Hungry agreed on May 22, 2013.

44.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the disposition by Very Hungry of the outstanding warrants to purchase 4,841,608 shares as described in Paragraph 42 is deemed to be equivalent to the sale by Very Hungry of 4,841,608 shares of Prospect common stock (96,833 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

45.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the purchase by Very Hungry of the new warrants to purchase 4,841,608 shares of Very Hungry common stock as described in Paragraphs 40 and 42 is deemed to be equivalent to the purchase by Very Hungry of 4,841,608 shares of Prospect common stock (96,833 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

46.     For purposes of "matching" both the sale described in Paragraphs 40 through 43 and the purchase there described with the other transactions identified in this Complaint as other deemed purchases or sales by Very Hungry under Section 16 of the Act and the SEC rules and regulations thereunder, the price at which Very Hungry was deemed to have sold the 96,833 (adjusted) shares and purchased the 96,833 (adjusted) shares of Prospect common stock was, in each case, approximately $11 per share.  Upon information and belief, $11 per share was the

(approximate, adjusted) closing market price for Prospect common stock publicly traded on the NASDAQ Exchange on May 22, 2013.

**The Reiman Defendants**

47.     The Reiman Trust beneficially owned warrants to purchase a total of 1,893,650 shares of Prospect common stock which were amended as a result of the Modification Agreement on May 22, 2013, as described in Paragraphs 40 through 43.

48.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the amendment of the warrants was deemed to be equivalent to: (i) the disposition or sale by the Reiman Trust of the outstanding warrants to purchase a total of 1,893,650 shares of Prospect common stock (the equivalent of 37,873 shares, after adjusting for the 50 to 1 reverse stock split subsequently effected by the Company); and (ii) the simultaneous purchase by the Reiman Trust of new warrants for the purchase of a total of 1,893,650 shares of Prospect common stock (again equivalent to 37,873 shares in light of the subsequent 50 to 1 reverse stock split), with the new warrants having the amended terms to which Prospect, the Reiman Trust and Very Hungry agreed on May 22, 2013.

49.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the disposition by the Reiman Trust of the outstanding warrants for the purchase of 1,893,650 shares as described in Paragraphs 47 through 49 is deemed to be equivalent to the sale by the Reiman Trust of 1,893,650 shares of Prospect common stock (37,873 shares, after adjusting for the subsequent 50 to 1 reverse stock split).

50.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the purchase by the Reiman Trust of the new warrants for the purchase of 1,893,650

shares of Prospect common stock is deemed to be equivalent to the purchase by the Reiman

Trust of 1,893,650 shares of Prospect common stock (37,873 shares, after adjusting for the

subsequent 50 to 1 reverse stock split).

51.     For purposes of "matching" both the sale described in Paragraphs 47 through 49

and the purchase described in Paragraph 48 with the other transactions identified in this

Complaint as deemed purchases or sales by the Reiman Trust under Section 16 of the Act and

the SEC rules and regulations thereunder, the price at which the Reiman Trust was deemed to

have sold the 37,873 (adjusted) shares of Prospect common stock and purchased the 37,873

(adjusted) shares of Prospect common stock was, in each case, approximately $11 per share.

Upon information and belief, $11 per share was the (approximate, adjusted) closing market price

for Prospect common stock publicly traded on the NASDAQ Exchange on May 22, 2013.

### The August 30, 2013 Acquisition of "Units"
### (Equivalent to the Purchase of
### Prospect Common Stock by Very Hungry and the Reiman Trust)

52.     Pursuant to the Modification Agreement of May 22, 2013, the Reiman Trust and

Very Hungry agreed, pending approval of Prospect's shareholders as required by NASDAQ rules,

to invest the Notes into units offered in Prospect's rights offering.

53.     To effect the investment contemplated by the Modification Agreement of May 22,

2013, Very Hungry, the Reiman Trust and Prospect entered into a Note Exchange and

Subscription Agreement on July 10, 2013 (the "Exchange Agreement"), by which Very Hungry

and the Reiman Trust agreed to exchange their Notes into shares of the Prospect's Senior

Mandatorily Convertible Preferred Stock (the "Preferred Stock").  As a result of the Exchange

Agreement, Very Hungry acquired 4,436,017.30 shares of Preferred Stock, and the Reiman Trust

acquired 1,063,982.70 shares of Preferred Stock, which, in the aggregate, represented all of the Preferred Stock in the Company.

54.     The Exchange Agreement further provided that, upon obtaining the shareholder approval required by applicable NASDAQ rules, Very Hungry's and the Reiman Trust's shares of Preferred Stock would convert automatically into units consisting of common stock and warrants to purchase common stock (the "Units"), pursuant to conversion procedures and at a conversion rate provided by the Exchange Agreement.

55.     Shareholder approval for the conversion of the Preferred Stock to Units was sought by the Company in a proxy statement issued on August 1, 2013, and was obtained on August 30, 2013.  Pursuant to the Exchange Agreement, the Preferred Stock converted automatically into Units when shareholder approval was obtained at the close of business on August 30, 2013.

**<u>Very Hungry</u>**

56.     Upon information and belief, as a result of the conversion of its Preferred Stock on August 30, 2013, Very Hungry acquired Units consisting of 739,337 shares of Prospect common stock, and warrants to purchase an additional 1,095,313 shares of Prospect common stock (the number of shares covered by the Units as identified in this Paragraph 53 have been adjusted to reflect the 50 to 1 stock split effected by the Company upon obtaining shareholder approval on August 30, 2013).

57.     For purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the acquisition by Very Hungry of the Units, as described in Paragraph 53, is deemed to be equivalent to the purchase by Very Hungry of all of the shares of common stock covered by

the Units.  Because Very Hungry's conversion of the Notes into Units was conditioned upon

obtaining shareholder approval, for purposes of Section 16 of the Act and the SEC rules and

regulations thereunder, Very Hungry is deemed to have purchased a total of 1,834,650 shares of

Prospect common stock when shareholder approval of that conversion was obtained on August

30, 2013.

58.     For purposes of "matching" the purchase described in Paragraph 54 with the other

transactions identified in this Complaint as deemed sales by Very Hungry under Section 16 of

the Act and the SEC rules and regulations thereunder, the price at which Very Hungry was

deemed to have purchased the 1,834,650 shares of Prospect common stock as described in

Paragraph 54 was approximately $3 per share.  Upon information and belief, $3 per share was

the (approximate, adjusted) closing market price for Prospect common stock publicly traded on

the NASDAQ Exchange on August 30, 2013.

**The Reiman Defendants**

59.     Upon information and belief, as a result of the conversion of its Preferred Stock

on August 30, 2013, the Reiman Trust acquired Units consisting of 199,086 shares of Prospect

common stock, and warrants to purchase an additional 300,586 shares of Prospect common stock

(the number of shares covered by the Units as identified in this Paragraph 59 have been adjusted

to reflect the 50 to 1 stock split effected by the Company upon obtaining shareholder approval on

August 30, 2013).

60.     For purposes of Section 16 of the Act and the SEC rules and regulations

thereunder, the acquisition by the Reiman Trust of the Units, as described in Paragraph 59, is

deemed to be equivalent to the purchase by the Reiman Trust of all of the shares of common

stock covered by the Units.  Because the Reiman Trust's conversion of the Notes into Units was conditioned upon obtaining shareholder approval, for purposes of Section 16 of the Act and the SEC rules and regulations thereunder, the Reiman Trust is deemed to have purchased a total of 499,672 shares of Prospect common stock when shareholder approval of that conversion was obtained on August 30, 2013.

61.     For purposes of "matching" the purchase described in Paragraphs 59 and 60 with the other transactions identified in this Complaint as deemed sales by the Reiman Trust under Section 16 of the Act and the SEC rules and regulations thereunder, the price at which the Reiman Trust was deemed to have purchased the 499,672 shares of Prospect common stock was approximately $3 per share.  Upon information and belief, $3 per share was the (approximate, adjusted) closing market price for Prospect common stock publicly traded on the NASDAQ Exchange on August 30, 2013.

**FIRST CLAIM FOR RELIEF**
**(AS TO DEFENDANT VERY HUNGRY)**

62.     Plaintiff realleges the allegations in paragraphs 1 through 61.

63.     Defendant Very Hungry had a direct or indirect pecuniary interest in all of the shares of common stock and warrants purchased or sold as described in Paragraphs 28-34, 40-46, 52-58 and elsewhere.

64.     Some or all of the sales (deemed or actual) by Defendant Very Hungry of shares of Prospect common stock as described above, occurred within six months of, and at prices higher than, the purchases (deemed or actual) by Defendant Very Hungry of shares of Prospect common stock as described herein.

65.     As a result of the transactions aforesaid and pursuant to the "lowest in, highest out" method and SEC rules for computing profits realized under Section 16(b), Defendant Very Hungry realized short swing profits, which upon information and belief amount to approximately $1,936,660, or such different amount as may be proved.

66.     Pursuant to Section 16(b) of the Act, the short swing profits realized by Defendant Very Hungry as described in Paragraph 62 inured to and are the lawful property of Prospect, recoverable by Plaintiff in its stead, Prospect having failed or refused to seek recovery of the same.

## SECOND CLAIM FOR RELIEF
## (AS TO THE REIMAN DEFENDANTS)

67.     Plaintiff realleges the allegations in paragraphs 1 through 66.

68.     The Reiman Defendants had a direct or indirect pecuniary interest in all of the shares of common stock and warrants purchased or sold by the Reiman Trust as described in Paragraphs 35-39, 47-51, 59-61 and elsewhere.

69.     Some or all of the sales (deemed or actual) by the Reiman Trust of shares of Prospect common stock as described in herein occurred within six months of, and at prices higher than, the purchases (deemed or actual) by the Reiman Trust of shares of Prospect common stock.

70.     As a result of the transactions described as aforesaid, and pursuant to the "lowest in, highest out" method and SEC rules for computing profits realized under Section 16(b), the Reiman Defendants realized short swing profits, which upon information and belief amount to approximately $757,460, or such different amount as may be proved.

71.     Pursuant to Section 16(b) of the Act, the short swing profits realized by the Reiman Defendants inured to and are the lawful property of Prospect, recoverable by Plaintiff in its stead, Prospect having failed or refused to seek recovery of the same.

### THIRD CLAIM FOR RELIEF
### (AS TO DEFENDANT VERY HUNGRY AND THE REIMAN DEFENDANTS)

72.     Plaintiff realleges and incorporates by reference the allegations in Paragraphs 1 through 71.

73.     This Third Claim for Relief is a precaution against possible errors of detail attributable to gaps or inaccuracies in the public record, the failure of Defendants to file reports as required by Section 16(a) of the Act, or against the discovery or execution of additional short-swing trades during the course of this action.

74.     Defendants purchased and sold shares of Prospect common stock (or derivative securities thereof) within periods of less than six months.

75.     These sales and purchases cannot be identified by Plaintiff with specificity because they have not been publicly reported, and Defendants failed or refused to disclose these trades (or the lack thereof) upon inquiry from Plaintiff's counsel.

76.     These sales and purchases within periods of less than six months resulted in recoverable profits under Section 16(b), their exact amount being unknown to Plaintiff, which profits inured to and are the lawful property of Prospect, recoverable by Plaintiff in its stead, Prospect having failed or refused to seek recovery of the same.

### DEMAND FOR JURY TRIAL

77.     Plaintiff respectfully demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

(a)     Requiring Defendants to account for and pay over to Prospect the short swing profits recoverable from each of them under Section 16(b) of the Act, together with appropriate pre- and post-judgment interest and the costs of this suit;

(b)     Awarding to Plaintiff his costs and disbursements including reasonable attorney's, accountant's and expert witness fees; and

(c)     Granting to Plaintiff such other further relief as the Court may deem just and proper.

Dated: March 25, 2014
        New York, New York

s/ David Lopez_____
**David Lopez, Esq.**
171 Edge of Woods Road
P.O. Box 323
Southampton, NY 11969
Telephone:     (631) 287-5520
Email:          DavidLopezEsq@aol.com

*Attorney for Plaintiff Aaron Rubenstein*

Address of Plaintiff:
70 Vassar Avenue
Providence, RI 02906